# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDGAR MOSQUERA GAMBOA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1220 (RJL) |
| | ) | |
| EXECUTIVE OFFICE FOR UNITED | ) | |
| STATES ATTORNEYS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FILED**

AUG 2 6 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(August 2̲5̲ , 2014) [Dkt. #26]

This matter is before the Court on defendants' Motion for Summary Judgment

[Dkt. #26]. Upon consideration of the parties' pleadings, relevant law, and the entire

record in this case, the defendants' Motion for Summary Judgment is GRANTED in part

and DENIED in part.

## BACKGROUND

According to the Federal Bureau of Investigation ("FBI"), "[p]laintiff Edgar

Mosquera Gamboa and his associates were the subject[s] of a joint task force law

enforcement investigation for criminal activities including money laundering and cocaine

drug trafficking." Memorandum of Points and Authorities in Support of Defendants'

Motion for Summary Judgment ("Defs.' Mem."), Declaration of David M. Hardy

("Hardy Decl.") ¶ 4. Plaintiff has brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, in an attempt to obtain records about himself and his criminal case that are allegedly maintained by three components of the United States Department of Justice ("DOJ"): the Executive Office for United States Attorneys ("EOUSA"), the Federal Bureau of Investigation, and the Drug Enforcement Administration ("DEA"). *See* Complaint ("Compl.") at 3-3B (page numbers designated by plaintiff). Plaintiff sought documents "that he believes would help . . . him in obtaining his ['seized'] (not forfeited) funds in a collateral challenge" to his criminal conviction. Plaintiff's Statement of Material Facts As To Which There Exists a Genuine Issue Necessary to be Litigated ("Pl.'s SOMF") at 2 (page numbers designated by the Court) (brackets in original).[1]

## I. Executive Office for United States Attorneys

In his initial FOIA request to the EOUSA, plaintiff, who identified his criminal case by district court case number, sought the following information:

  (1)   FBI 302 documentation.
  (2)   All lab reports.
  (3)   Vaughn Index Material.
  (4)   Search and/or Arrest Warrants.
  (5)   Indictment (both original and Superseding).
  (6)   Forfeiture Notices.
  (7)   Affidavits and or Statements.
  (8)   Documentation of Evidence Seized/Confiscated.
  (9)   Any and All Investigative Memorandums/Materials.

---

[1]   The Court refers to Plaintiff's Statement of Material Facts As To Which There Exists a Genuine Issue Necessary to be Litigated [Dkt. #33] which has been docketed as a "Supplemental Memorandum." This submission appears to be a corrected or revised copy of the Plaintiff's Statement of Material Facts As To Which There Exists a Genuine Issue Necessary to be Litigated, which plaintiff filed with his opposition [Dkt. #32] to defendants' motion.

Defs.' Mem., Declaration of David Luczynski ("Luczynski Decl."), Ex. A (Freedom of Information Act Request dated February 28, 2011) at 1-2. In separate correspondence, in addition to the items listed above, plaintiff requested DEA Lab Report Nos. F3806, F3807 and F3808 and fingerprint reports from 1993 until the present. *See* Luczynski Decl., Ex. B (Freedom of Information Act Request dated April 19, 2011). A search for records in the United States Attorney's Office for the Southern District of Texas yielded no responsive records. *See id.* ¶ 7; *see also id.*, Ex. C (Letter to plaintiff from Susan B. Gerson, Acting Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated June 20, 2011). Plaintiff appealed this determination to the DOJ's Office of Information Policy ("OIP"). *See id.*, Ex. E (Letter to Office of Information Policy from plaintiff dated July 19, 2011). OIP remanded the matter "for further review and processing of records . . . located subsequent to [the] appeal." *Id.*, Ex. G (Letter to plaintiff from Janice Galli McLeod, Associate Director, OIP, dated February 9, 2012, regarding Appeal No. AP-2011-02702).

On remand, plaintiff narrowed his request to the following information:

> 1. Lab Reports F-3806 [and] F-3808. 2. Surveillance Log for Feb. 26, 1993 for Special Agents Efrain Gutierrez, Clark Webb, John R. Seeger, Herb Hoover, Jr., Luis A[.] Vazquez, and D. Hansen. 3. Forfeiture Notices and final dispositions for the seizure of $2,495[,]733.00 on March 12, 1993, from a Dodge Caravan and the seizure of $255,710.00 from the master bedroom at 16615 Dounreays, both in Houston, Texas. Additional, the seizure of $522.00 from Edgar Mosquera Gambo[]a on the day of his arrest in Houston, Texas, on March 12, 1993.

*Id.*, Ex. J (Letter from plaintiff dated February 28, 2013). A second search of records maintained by the United States Attorney's Office for the Southern District of Texas yielded no responsive records. *See id.*, Ex. K (Letter from Susan B. Gerson dated March 11, 2013).

## II. Federal Bureau of Investigation

### A. FOIPA Request No. 402645-001

Plaintiff's original FOIA request to the FBI sought:

> The (2) Lab Reports from case no. CR-9382-3, Lab Report F-3806 and F-3808 that had been referred to (F.B.I.) by the (D.E.A.) on Aug[.] 29, 2011[and] any and all records relat[ing] to [plaintiff], and that [the FBI has] obtained, and stored by listing outside parties.

Hardy Decl., Ex. A (Freedom of Information Act Request dated October 5, 2011). A search of records maintained by FBI's Headquarters ("FBIHQ") located approximately 1,233 pages of potentially responsive records. *See id.* ¶ 9. After receipt of plaintiff's agreement to pay fees for photocopies, *see id.* ¶¶ 9-11, of 182 pages of records reviewed by FBIHQ staff, 89 pages were released either in full on in redacted form, relying on FOIA Exemptions 6, 7(C), 7(D), and 7(E), *id.* ¶ 15.[2] In the course of processing its records, FBIHQ staff located records which had originated at two other DOJ components (the Bureau of Alcohol, Tobacco and Firearms, and the Drug Enforcement Administration) and at U.S. Customs and Border Protection (formerly the United States Customs Service), a component of the U.S. Department of Homeland Security. *See id.*

---

[2]  The FBIHQ notified plaintiff that it located "190" series files that were potentially responsive to his FOIA request, but the agency did not process these records because it did not receive plaintiff's written request to do so. *See* Hardy Decl. ¶ 14 n.1.

¶ 15. These records were referred to those entities for direct response to plaintiff. *See id.*

After this litigation commenced, in Plaintiff's Response [Dkt. #11] to Defendant's Status Report [Dkt. #10], plaintiff further revised his FOIA request:

> 1. Lab Reports F-3806 and F-3808; 2. Surveillance Log for February 26, 1993, for Special Agents Efrain Gutierrez, Clark Webb, John R. Seeger, Herb Hoover Jr., Luis A. Vazquez, and D. Hanson; 3.Forfeiture Notices and final dispositions for the seizure of $2,495,733.00 on March 12, 1993, from a Dodge Caravan and the seizure of $255,710.00 on March 12, 1993, from the master bedroom at 15615 or 16615 Dounreays, both in Houston, Texas. Additionally, the seizure of $522.00 from Edgar Mosquera Gambo[]a on the day of his arrest in Houston, Tx., on March 12, 1993.

Hardy Decl. ¶ 16. The FBIHQ reopened plaintiff's FOIA request and its staff conducted additional searches for these particular items. *See id.* ¶ 17. The search yielded an additional 46 pages of records and the FBIHQ released 24 pages in redacted form, relying on FOIA Exemptions 6, 7(C), 7(D) and 7(E). *See id.* ¶ 18. The search also "located documents originat[ing] with another government agency," U.S. Customs and Border Protection, and the FBI referred the documents to that agency for consultation. *Id.*

### B. FOIPA Request No. 1172633

As is explained below, the DEA referred 2 pages of records to the FBI. *See id.* ¶ 20. Both pages were released to plaintiff in part, after redacting information under FOIA Exemptions 6 and 7(C). *See id.* ¶ 21.

## III. Drug Enforcement Administration

### A. DEA FOIA Request No. 10-00824-F

In July 2010, plaintiff submitted a FOIA request to the DEA seeking two lab reports identified by number—F 3806 and F 3808—in a particular criminal case also identified by number—CR-H-93 82-3. *See* Defs.' Mem., Declaration of William C. Little, Jr. ("Little Decl."), Ex. A (Freedom of Information/Privacy Act Request for Records dated July 29, 2010). DEA staff located two pages of records and referred both pages to the FBI, the DOJ component where they originated, for its direct response to plaintiff. *See* Little Decl. ¶¶ 15-16; *see also id.*, Ex. D (Letter to plaintiff from Katherine L. Myrick, Chief, Freedom of Information/Privacy Act Unit, FOI/Records Management Section, DEA, dated August 29, 2011). The DEA's declaration neither indicated whether a search for responsive records was conducted, nor described the results of a search.

### B. DEA FOIA Request No. 13-00005-PR

The records referred by the FBI to the DEA consisted of four documents, totaling 26 pages. *See id.* ¶ 17. Of those 26 pages, three pages were referred to the Organized Crime Drug Enforcement Task Force ("OCDETF") for its review and direct response to plaintiff. *See id.* ¶ 18; *see also id.*, Ex. F (Letter to Jill Aronica, FOIA Officer, OCDETF Executive Office, from Katherine L. Myrick, Chief, Freedom of Information/Privacy Act Unit, FOI/Records Management Section, DEA, dated March 14, 2013). Of the remaining pages, the DEA withheld certain information under FOIA Exemptions 7(C), 7(E), and 7(F); it released 15 pages in part and withheld eight pages in full. *See id.* ¶¶ 19, 21.

## IV.  U.S. Customs and Border Protection

The FBI referred to U.S. Customs and Border Protection ("CBP") a one-page record "indicating that certain biographical information and investigative information was entered into a CBP law enforcement system of records." Hardy Decl., Ex. S ("Suzuki Decl.") ¶ 6. The record was released to plaintiff in redacted form, as CBP relied on FOIA Exemptions 6, 7(C), and 7(E). *See id.* ¶¶ 10, 20.

## V.  Executive Office for Organized Crime Drug Enforcement Task Forces

The DEA referred to the Executive Office for Organized Crime Drug Enforcement Task Forces a three-page document. *See* Defs.' Mem., Declaration of Jill Aronica ("Aronica Decl.") ¶ 2. Relying on FOIA Exemptions 7(C), 7(E), and 7(F), OCDETF withheld the document in full. *See id.* ¶¶ 4, 21.

## STANDARD OF REVIEW

FOIA cases are typically resolved on motions for summary judgment. *See Petit-Frere v. U.S. Attorney's Office for the Southern Dist. of Florida*, 800 F. Supp. 2d 276, 279 (D.D.C. 2011) (citations omitted), *aff'd per curiam*, No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir. Sept. 19, 2012). The court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption,

and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). In cases where an agency locates no records responsive to a FOIA request, summary judgment is warranted when the agency demonstrates its compliance with FOIA by means of "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Justice*, 920 F.2d 57, 68 (D.C. Cir. 1990).

## ANALYSIS

### I.     Defendants' Searches for Responsive Records

"It is elementary that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (footnotes, brackets and internal quotation marks omitted). To this end, an agency may submit, and the court may rely upon, "reasonably detailed, nonconclusory affidavits describing its [search] efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Ordinarily, the agency's supporting affidavit or declaration "should 'denote which files were searched,' by whom those files were searched, and reflect a 'systematic approach to document location.'" *Toensing v. U.S. Dep't of Justice*, 890 F. Supp. 2d 121, 142 (D.D.C. 2012) (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980)). A search can be adequate even if an agency does not locate the requested

records. *See Boyd v. Criminal Division of the U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). "[T]he focus of the adequacy inquiry is not on the results," *Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003), *aff'd per curiam*, No. 03-5257, 2004 WL 1900562, at *1 (D.C. Cir. Aug. 25, 2004), but on whether the search itself was "reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

## A. EOUSA

The task of conducting the EOUSA's searches for records responsive to plaintiff's FOIA request fell to the Supervisory Records Management Specialist at the United States Attorney's Office for the Southern District of Texas, whose duties include the coordination of FOIA requests forwarded by the EOUSA to the USAO/SDTX. *See* Defs.' Mem., Declaration of Cristina Stennett ("Stennett Decl.") ¶ 1. The search began with a query of LIONS, "a computerized docketing/case management system" which "tracks cases or matters for the entire USAO/SDTX." *Id.* ¶ 2. The declarant further described LIONS as follows:

> Whenever a file on a new matter/case is opened, the docketing clerk . . . enter[s] applicable information into the LIONS database system and assign[s] the case or matter a "USAO" number which [is] used as an internal tracking number . . . . The information entered in LIONS is based on a series of individual records which are linked together, or related, in a logical order. These records may include, but are not limited to, the names of the parties, the names of any related cases, charging document, violation code, assigned prosecutor, the Court assigned to the case, and what stage the case is in.

9

> LIONS allows the user to search all USAO-SDTX
> matters/cases for a specific name. If the name for which the
> search is done was not included in the information entered
> into the LIONS system for a particular matter/case, the search
> would not identify that matter as containing potentially
> responsive information. The LIONS system is capable of
> cross-referencing other related cases if such related case
> information is entered into the system.
>
> The LIONS system is the current database record
> tracking system that is available and used by the USAO-
> SDTX. Due to the large number of files maintained by the
> Office (in excess of 99,000 files), any search for case related
> documents must be performed by the use of LIONS . . . .
> Moreover, files are closed on a timely basis and such records
> are shipped periodically to the Federal Records Center in Fort
> Worth where they are maintained for a specified number of
> years (typically 10 years).

*Id.* ¶¶ 2-4. According to declarant David Luczynski, "[a]ll responsive documents to

[p]laintiff's FOIA request would have been located in the USAO/[SDTX]," and "[t]here

are no other records systems or locations within the EOUSA or DOJ [where] other files

pertaining to [p]laintiff's criminal case were maintained." Luczynski Decl. ¶ 15. "All

documents potentially response to [p]laintiff's FOIA request have been located in the

United States Attorney's Office for the District of Texas," and were "maintained in the

Criminal Case File System." *Id.* ¶ 16.

The USAO-SDTX's initial search yielded six boxes of documents, four of which

contained information related to plaintiff. *See* Stennett Decl. ¶¶ 6-10. Upon receipt of

the matter on remand from the OIP, the declarant "checked the Federal District Court's

Public Access to Computerized Records (PACER) in the party/case index," and found

"one criminal case on [plaintiff] which was (Criminal No. H-93-82)." *Id.* ¶ 12. The

10

declarant's LIONS search located "closed criminal and appeal cases" related to plaintiff. *Id.* ¶ 13. "[A] physical search" of the four boxes of records included a review of all criminal case files, the appellate file, and all envelopes, file folders and loose documents, yet no records responsive to the request were located. *See id.* ¶ 16. Next, the declarant contacted the Legal Support Manger of the Narcotics/OCDETF Section, the section of the USAO-SDTX where the case originated; it maintained no files or records pertaining to plaintiff. *See id.* ¶ 17.

Upon receipt of plaintiff's narrowed request, another manual search of records occurred, and this search included a review of the government's exhibit list for plaintiff's criminal trial. *See id.* ¶ 18. "As it relate[d] to the 'lab reports' or 'surveillance log', the exhibit list [did] not reflect these items as [having] been admitted at trial." *Id.* ¶ 19. With respect to plaintiff's request for records pertaining to forfeiture, neither the four boxes of records nor the Asset Forfeiture Division had any information. *See id.* ¶ 19.[3]

## B. FBI

The FBI's Central Records System ("CRS") includes "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes," and "consists of a numerical sequence of files broken down according to subject matter." Hardy Decl. ¶ 24. The subject matter of a CRS file "may relate to an individual, organization, company, publication, activity, or foreign intelligence matter." *Id.* FBIHQ maintains certain CRS records, while each FBI field office maintains CRS records

---

[3]  According to the declarant, the FBI handled the administrative forfeiture. *See* Stennett Decl. ¶ 19.

"pertinent to [that] specific field office[]." *Id.* In order to search the CRS, "the FBI uses .
. . the Automated Case Support System ('ACS')." *Id.* ¶ 26.

FBIHQ and Field Offices access the CRS using alphabetically ordered General
Indices. *See id.* ¶¶ 25-27. "The General Indices consist of index cards on various subject
matters that are searched either manually or though the automated indices." *Id.* ¶ 25.
There are two categories of General Indices:

> (a) A "main" entry – A "main" entry carries the name
> corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – A "reference" entry, sometimes
> called a "cross reference[,]" is generally only a mere mention
> or reference to an individual, organization, etc., contained in a
> document located in another "main" file on a different subject
> matter.

*Id.* "Searches made in the General Indices to locate records concerning a particular
subject are made by searching the index for the subject requested." *Id.*

Since 1995, FBIHQ, Field Offices and Legal Attaches have used the ACS system,
which consists of records that had been maintained in automated systems previously
employed by the FBI. *See id.* ¶ 26. "ACS consists of three integrated, yet separately
functional, automated applications that support case management functions for all FBI
investigative and administrative cases." *Id.* The Investigative Case Management
application "provides the ability to open, assign, and close investigative and
administrative cases [and to] set, assign, and track leads." *Id.* ¶ 26(a). Each new case is
assigned a Universal Case File Number, "which is utilized by all FBI field offices . . . and

FBIHQ . . . conducting or assisting in the investigation." *Id.* The Electronic Case File application "serves as the . . . electronic repository for the FBI's official text-based documents." *Id.* ¶ 26(b). The Universal Index application provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 26(c). The FBI does not index every name in its files; rather, an FBI Special Agent assigned to an investigation decides which information is "pertinent, relevant, or essential for future retrieval," and indexes the information accordingly. *Id.* ¶ 27. Without an index "to this mass of data, information essential to ongoing investigations could not be readily retrieved," and the FBI's files "would thus be merely archival in nature." *Id.* "[T]he General Indices to the CRS are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter or individual." *Id.*

The FBI's Electronic Surveillance ("ELSUR") Indices contain information "on subjects whose electronic and/or voice communications have been intercepted as the result of warrantless and/or consensual electronic surveillance, or court-ordered electronic surveillance conducted by the FBI." *Id.* ¶ 28. These indices are separate from the CRS and include information about "individuals who were the targets of surveillance, other participants in monitored conversations, and the owners, lessees, or licensors of the premises where the FBI conducted electronic surveillance." *Id.* ¶ 29. ELSUR indices also contain "the dates an individual was monitored; a confidential identification symbol number to identify the individual being monitored; and the location of the FBI field office that conducted the surveillance." *Id.*

13

Using variations of plaintiff's name and date of birth as search terms, FBI staff "conducted a search of the CRS . . . limited to years 1992 to the date of the ACS search of 10/27/11, as [plaintiff] requested." *Id.* ¶ 32. The search yielded "several main investigatory files, several administrative ('190') series files, as well as several cross-reference files indexed to plaintiff's name." *Id.* A second search not only confirmed these results, but also "yield[ed] numerous additional potentially responsive main investigatory and cross references listed under different variations of plaintiff's first and last name[s]." *Id.* ¶ 33 (footnote omitted).

FBIHQ staff searched the ELSUR indices "in an attempt to locate the surveillance log dated February 26, 1993 requested by plaintiff." *Id.* ¶ 34. The search located "a surveillance log dated 2/26/1993 in the investigative case file 245B-HO-29416, Sub-A, Serial 139." *Id* (footnote omitted). No formal forfeiture notices "or final disposition notices for the seizure date and/or monetary amounts referenced in plaintiff's request" were located; however, the FBI did "locate[] material referencing those seizures." *Id.* ¶ 35.

In total, the FBI identified 230 pages of responsive records; it released 9 pages in full, released 107 pages in part, withheld 114 pages in full, and referred 28 pages to other agencies. *See id.* ¶ 4. The first release—on October 18, 2011—related to records referred to the FBI by the DEA. *See id.* ¶ 20. The remaining two releases were records located through FBI searches. On September 25, 2012, the FBI notified plaintiff that it had processed 182 pages of records, and of these it released 89 pages in part or in full. *See id.* ¶ 15. On April 12, 2013, the FBI advised plaintiff that it had reviewed 46 pages

14

of records and of these it withheld 24 pages in part; the remainder of the records were referred to the CBP. *See id.* ¶ 18.

### C. DEA

The DEA's declarant states that the agency's response to plaintiff's request for copies of two specific lab reports was a referral of two pages of records to the FBI. *See* Little Decl. ¶¶ 13-16. The declarant does not describe a search, and thus neither plaintiff nor the Court can assess whether its search was reasonable.

## II. Plaintiff's Objections to the Searches

With respect to both the EOUSA and the FBI, plaintiff challenges the searches because they did not yield the records he requested, specifically those pertaining to the assets seized at the time of his arrest. *See generally* Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Summary Judgment Motion ("Pl.'s Opp'n") at 8-14 (page numbers designated by plaintiff). Because, he posits, the government has an affirmative obligation to maintain records regarding seized property, defendants' inability to locate such records is evidence of wrongdoing. *See, e.g., id.* at 10-11. "[W]hatever Database . . . Defendants used and reviewed[] obviously is not the correct one, and the ensuing search was either therefore, unreasonable, inadequate, records withheld, or the Defendants are in fact, and in law, bordering [on] Obstruction of Justice by misleading this Court." *Id.* at 11. After all, plaintiff states, he has received "pertinent records . . . located elsewhere." *Id.* at 12.

The only purported genuine issue of material fact asserted by plaintiff goes to the validity of the underlying seizure or forfeiture of assets, *see, e.g.* Pl.'s SOMF at 6-7, not

the adequacy of the searches for records. "[T]he issue to be resolved is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Weisberg*, 705 F.2d at 1351 (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)) (emphasis in original). Plaintiff's unsupported speculation as to the existence of records that defendants have not produced is not sufficient to withstand defendants' showing on summary judgment, at least with respect to the EOUSA and the FBI. *See Baker & Hostetler LLP*, 473 F.3d at 318 (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's decision that agency's search procedure was "reasonably calculated to generate responsive documents"); *Concepción v. Fed. Bureau of Investigation,* 606 F. Supp. 2d 14, 30 (D.D.C. 2009) ("[S]peculation as to the existence of additional records . . . does not render the searches inadequate.").

The Court concludes, based on the declarations provided by the EOUSA and the FBI—describing the scope and methods of the searches—that each entity conducted a search reasonably calculated to uncover records responsive to plaintiff's FOIA requests. The same cannot be said for the DEA. Its declarant does not describe a search at all, and thus, neither plaintiff nor the Court can assess whether its search was reasonable under the circumstances.

## III.   FOIA Exemption 7

The Court has reviewed plaintiff's Opposition to defendants' Motion for Summary Judgment, and concludes that his sole opposition relates to defendants' inability to locate specific documents pertaining to the seizure and forfeiture of assets. Plaintiff raises no

objection whatsoever to defendants' decisions to withhold information under FOIA Exemption 7. Absent any opposition from plaintiff, and because the Court concludes that defendants have justified their decisions to withhold information under FOIA Exemptions 7(C), 7(D) (express assurance of confidentiality) and 7(E), the Court treats their arguments as conceded.[4] *See, e.g., Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 237 (D.D.C. 2013) (where requester no longer contests withholdings under Exemptions 6 and 7(C), "[t]he Court . . . need not decide whether Defendants have improperly withheld portions of documents described . . . as containing 'personally identifiable information'"); *Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012) (where plaintiff's "opposition did not challenge the Secretary's proffered justifications under FOIA for having redacted [information,]" the arguments were "deemed conceded, and summary judgment [was] entered in favor of the Secretary"). As is discussed below, however, where defendants have not met their burden on summary judgment, specifically the FBI's reliance on Exemption 7(D) (implied assurance of confidentiality) and 7(F), summary judgment must be denied in part.

---

[4] The FBI's declarant explains that it is the practice of the FBI to assert Exemption 6 in conjunction with FOIA Exemption 7(C) where disclosure of information would or could reasonably be expected to constitute an unwarranted invasion of personal privacy. *See* Hardy Decl. ¶¶ 43-45 & n.6. The CBP's declarant explains that the agency applied FOIA Exemption 6 "to withhold the names, dates of birth, and race of third party individuals mentioned in the record as release of the names, dates of birth, and race of these individuals would constitute a clearly unwarranted invasion of personal privacy." *Id.*, Suzuki Decl. ¶ 12. Because the Court finds that the same information is properly withheld under FOIA Exemption 7(C), a discussion of the applicability of FOIA Exemption 6 is unnecessary. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *Simon v. U.S. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992).

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see also Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The FBI's declarant states that "[t]he records at issue were compiled for criminal law enforcement purposes during the course of the FBI's performance of its law enforcement mission, including the investigation of criminal activities of plaintiff and other subjects involved in a money laundering and cocaine drug trafficking enterprise." Hardy Decl. ¶ 41.

CBP, its declarant states, "is a law enforcement agency," the mission of which is "to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and [to] foster our Nation's economy by facilitating lawful international trade and travel." Suzuki Decl. ¶ 3. The CBP record at issue is a one-page document "indicating that certain biographical information and investigative information was entered into a CBP law enforcement system of records." *Id.* ¶ 6. The declarant further states that the record not only was "created as a result of law enforcement proceedings," *id.* ¶ 14, but also was "compiled in

18

direct relation to CBP's law enforcement mandate to enforce both the customs and immigration laws," *id.* ¶ 16, specifically, the "inspection and screening of international travelers," *id.* ¶ 14.

The OCDETF is described as "a multi-agency program in the [DOJ] that provides policy direction and funding to drug enforcement agencies for the investigation and prosecution of high level drug trafficking organizations." Aronica Decl. ¶ 8. The record at issue is a three-page document referred to the OCDETF by the DEA, *id.* ¶ 2, and identified as "an administrative case initiation form . . . required for OCDETF designation and funding of an investigation targeting the Plaintiff," *id.* ¶ 14. "All of the information on this form," the declarant avers, "was compiled for law enforcement purposes, namely to facilitate the investigation and criminal prosecution of the requester." *Id.*

The Court concludes that the declarants of the FBI, CBP and OCDETF readily demonstrate that the relevant records have been compiled for law enforcement purposes and thus fall within the scope of FOIA Exemption 7.

## A. FOIA Exemption 7(D)

FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an

> agency conducting a lawful national security intelligence
> investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of [FOIA] Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998). Rather, "[a] source is confidential within the meaning of exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (quoting *Landano*, 508 U.S. at 170-74). "When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential." *Roth*, 642 F.3d at 1184 (internal quotation marks and citation omitted). For example, the Court considers "the nature of the crime . . . investigated and the source's relation to it" to determine whether implied confidentiality exists. *Landano*, 508 U.S. at 180.

Here, the FBI withholds "the names, identifying information, and information provided by third parties, including individuals who provided information to the FBI under an implied assurance of confidentiality." Hardy Decl. ¶ 62. These sources, the declarant states, "provided specific detailed information that is singular in nature concerning a specific investigation." *Id.* Disclosure of their identities, the declarant

asserts, "could have a disastrous impact" on these individuals, as well as on the FBI's ability to obtain the cooperation of sources in future investigations. *See id.* ¶ 63.

Missing from the declaration is any explanation as to the connection between the source(s) and plaintiff or his criminal activities. Nor is there any description of the circumstances which purportedly gave rise to the implication that the source(s) provided information to the FBI only with the understanding that their identities and the information they provided would not be released to the public. The FBI fails to demonstrate that it properly withheld information under FOIA Exemption 7(D) with respect to source(s) who provided information to the FBI under an implied assurance of confidentiality.

### B.  FOIA Exemption 7(F)[5]

FOIA Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "While courts generally have applied [FOIA] Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm." *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006) (quoting 5 U.S.C. § 552(b)(7)(F)). "In reviewing claims under [FOIA exemption 7(F), courts have inquired whether there is some nexus between

---

[5]  The DEA has withheld the names of DEA Special Agents, state and local law enforcement personnel, and support personnel under FOIA Exemption 7(F) in conjunction with FOIA Exemption 7(C). *See* Little Decl. ¶ 44. Because the withheld information is found to be protected under FOIA Exemption 7(C), the Court need not separately consider the applicability of FOIA Exemption 7(F) to these particular documents. *See Roth*, 642 F.3d at 1173.

disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque Publ'g Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)); *see also Linn v. U.S. Dep't of Justice*, No. 92-1406, 1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995) (noting court's inquiry as to "whether there is some nexus between disclosure and possible harm"). "Within limits, the Court defers to the agency's assessment of danger." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009).

### 1. FBI

The FBI withholds under FOIA Exemption 7(F) the identity of and information provided by an individual. "In light of the detailed nature of the information the source has provided to the FBI, it is reasonable to expect that release of his/her identifying information would place him/her and [his/her] family at great risk." Hardy Decl. ¶ 76. This conclusory statement alone cannot support the FBI's decision to withhold information under FOIA Exemption 7(F). *See, e.g., Long*, 450 F. Supp. 2d at 80 (finding that agency offering "little more than conclusory assertions that disclosure will increase the chances that third parties will be harmed in some way" does not justify withholding information under FOIA Exemption 7(F)). The declarant does not "describe[] with sufficient particularity," *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 111 (D.D.C. 2010), the FBI's concern that release of this information will bring about the types of harm the exemption is designed to avoid.

## 2. OCDETF

The responsive record at issue is a case initiation form containing the names and contact numbers of individuals involved in the investigation of plaintiff's criminal activities, as well as information about the targets and goals of the investigation. *See* Aronica Decl. ¶¶ 9-12. The declarant explains that the OCDETF's concern that disclosure of information potentially subjects the protected individuals to "harassment, harm, or exposure to unwanted or derogatory publicity and inferences," *id.* ¶ 16, is even greater "with respect to individuals who participate in criminal investigations of high level drug trafficking organizations," *id.* ¶ 17. "Release of this privacy-protected information could also reasonably be expected to endanger their lives or safety, given the resources typically available to these criminal organizations and the consequences to the members of the organization if they are caught and successfully prosecuted." *Id.* Although this explanation is slightly more substantial than that offered by the FBI, it too fails to adequately demonstrate a connection between the protected individuals and the purported reasonable expectation that their lives or physical safety will be endangered as a result of disclosure.[6]

## CONCLUSION

Thus, for all the foregoing reasons, the Court concludes that: (1) the EOUSA and the FBI have conducted adequate searches for records responsive to plaintiff's FOIA

---

[6] For purposes of a renewed motion for summary judgment, if the necessary detail would disclose the very information defendants mean to withhold, defendants may submit an *in camera* declaration or may submit copies of the documents themselves for *in camera* review. *See Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 831-32 & n.67 (D.C. Cir. 1979) (citation omitted).

request; (2) the EOUSA fulfilled its obligations under FOIA, notwithstanding its "no records" response; (3) the FBI, CBP and OCDETF properly withheld information under FOIA Exemptions 7(C) and 7(E); and (4) the FBI properly withheld information under Exemption 7(D) based on an express assurance of confidentiality. For these reasons, defendants' Motion for Summary Judgment is GRANTED in part. Summary judgment is DENIED, in part, because: (1) the DEA did not demonstrate that its search for records responsive to plaintiff's FOIA request was adequate; (2) the FBI did not demonstrate that informant(s) provided information under an implied assurance of confidentiality for purposes of FOIA Exemption 7(D); and (3) neither the FBI nor the OCDETF demonstrated that the withholding of information under FOIA Exemption 7(F) was appropriate. The Court defers its consideration of segregability. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge