UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDGAR MOSQUERA GAMBOA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1220 (RJL) |
| | ) | |
| EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

SEP 0 1 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(August 31, 2015) [Dkt. #45]

Plaintiff Edgar Mosquera Gamboa ("plaintiff") commenced this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, seeking records pertaining to a joint task force investigation by the Executive Office of the United States Attorneys ("EOUSA"), the Federal Bureau of Investigation ("FBI") (together, "defendants"), and the Drug Enforcement Administration ("DEA"), into money laundering and cocaine trafficking offenses for which plaintiff was ultimately convicted. *See* Compl. [Dkt. #1]. On August 26, 2014, the Court denied in part defendants' first Motion for Summary Judgment [Dkt. #26] on the grounds that: (1) the DEA did not demonstrate that its search for records responsive to plaintiff's FOIA request was adequate; (2) the FBI did not demonstrate that informant(s) provided information under an implied assurance of confidentiality for purposes of FOIA Exemption 7(D); and (3) neither the FBI nor the Executive Office for Organized Crime Drug Enforcement Task Forces ("OCDETF")

1

demonstrated that the withholding of information under FOIA Exemption 7(F) was appropriate. *See generally Gamboa v. Exec. Office for U.S. Attorneys*, 65 F. Supp. 3d 157 (D.D.C. 2014). The Court assumes familiarity with the factual and procedural background of this case and, in the interest of judicial economy, addresses only the legal issues now at hand in Defendants' Renewed Motion for Summary Judgment [Dkt. #45] pertaining to the remaining three issues. Upon consideration of the parties' pleadings, the relevant law, and the entire record herein, the Court GRANTS defendants' Motion and DISMISSES the case.

## STANDARD OF REVIEW

FOIA cases are typically resolved on motions for summary judgment. *See Petit-Frere v. U.S. Attny's Office for the S. Dist. of Flor.*, 800 F. Supp. 2d 276, 279 (D.D.C. 2011) (citations omitted), *aff'd per curiam*, No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir. Sept. 19, 2012). A court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the FOIA context, an agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

## DISCUSSION

### I. The Adequacy of the DEA's Search for Responsive Records

I begin by addressing the adequacy of the DEA's search for records responsive to plaintiff's FOIA request. "It is elementary that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (footnotes, brackets, and internal quotation marks omitted). Unfortunately for plaintiff, I conclude that the DEA's search was appropriate.

In July 2010, plaintiff submitted a FOIA request to the DEA that read in relevant part:

> "I would like to have the two (2) lab report for the case # CR-H-82-3
> 
> 1) Lab report F3806
> 2) Lab report F3808
> Requested information will consist of the dates from 1993- to the Present Date
> A Vaughn Index is requested and also expected

Mem. of P. & A. in Support of Defs.' Mot. for Summ. J., ("Defs.' First Mem.") [Dkt. #26-1], Decl. of William C. Little, Jr., ("Little Decl."), Ex. A (Freedom of Information/Privacy Act Request for Records dated July 29, 2010) [Dkt. #26-6]. DEA staff construed plaintiff's request as one "seeking two (2) laboratory reports associated with Criminal Case Docket No. CR-H-9382-3 for Lab Report No. F3806 and F3808." Mem. of P. & A. in Support of Defs.' Renewed Mot. for Summ. J. ("Defs.' Second

Mem.") [Dkt. #45], Supplemental Decl. of William C. Little, Jr., ("Supp. Little Decl.") ¶ 3 [Dkt. #45-1]. Based on the limited information contained in plaintiff's request, defendants determined that "information responsive to the plaintiff's request is criminal investigatory data compiled for law enforcement purposes that would be contained in a criminal investigative file maintained in the DEA Investigative Reporting and Filing System ('IRFS') and/or the files of the DEA laboratory that conducted the testing." Supp. Little Decl. ¶ 4.

As defendants have made clear, however, "[a] criminal case name or docket number is of no use in locating records contained [within] DEA investigative or laboratory records systems." *Id.* ¶ 8. In order to retrieve a laboratory report, one must determine "the 'Laboratory Number' and the location of the specific DEA laboratory that performed the analysis, or the investigative file number, the exhibit number and the laboratory that conducted the testing[.]" *Id.* Investigative case files in IRFS are organized "according to the name of the principal suspect violator or entity known to DEA at the time the file is opened[; the DEA] does not maintain a separate dossier . . . on every individual or entity that is of investigative interest." *Id.* ¶ 10. To search IRFS for investigative case files, one must use NADDIS, "the index and the practical means by which DEA retrieves investigative reports and information from IRFS." *Id.* ¶ 11. A NADDIS search then yields "a list of the investigative file number(s) and particular [reports of investigations] or other documents by date, that contain information regarding a particular individual or subject of an investigation." *Id.*

The DEA's declarant explains that, even though the agency had "insufficient information to locate the requested records, a FOIA information specialist conducted a NADDIS query using plaintiff's name, date of birth and social security number[.]" *Id.* ¶ 13. The search and its results are described as follows:

> The NADDIS query resulted in the identification of 22 investigative files in which plaintiff was mentioned and two (2) files in which an arrest was indicated. Given that only one of the files was opened in 1993 and the office opening the file was located in Houston, Texas, the DEA South Central Laboratory was chosen as the laboratory most likely to [have received] requests for forensic testing.
> A request was made to the South Central Laboratory to provide a copy of FBI lab reports for Lab No. F3806 and F3808 associated with DEA Investigative File No. M3-93-Z002.
> The South Central Laboratory forwarded two (2) completed DEA Form 7s identified with FBI File No. 245B-HO-29416 for Lab No. F3806 and 3808.

*Id.* ¶¶ 14-16.

DEA staff located two pages of records and referred both pages to the FBI for review. Little Decl. ¶¶ 15-16; *see id.*, Ex. D (Letter to plaintiff from Katherine L. Myrick, Chief, Freedom of Information/Privacy Act Unit, FOI/Records Management Section, DEA, dated August 29, 2011). Thereafter, by letter dated October 18, 2011, "the FBI released to plaintiff the two pages referred by the DEA" in redacted form. Defs.' First Mem., Decl. of David M. Hardy ¶ 20 [Dkt. #26-4].

Rather than respond directly to defendants' arguments about the adequacy of their search, plaintiff alleges that defendants collectively failed to release information pertaining to property seized by government agents at the time of his arrest, including

$2,495,733 from a vehicle, $255,710 from his residence, and $522 from his person on the day. *See* Pl.'s Opp'n and Cross-Mot. for Partial Summ. Default J. of Defs.' Renewed Mot. for Summ. J. and Extension of Time ¶¶ 3, 8 [Dkt. #46]; Aff. Accompanying Claim of Ownership of Property ¶¶ 4, 8 [ECF No. 46]; Pl.'s Opp'n to Defs.' Renewed Mot. for Summ. J. ("Pl.'s Opp'n") at 2-3 [Dkt. #51]. Plaintiff argues, for example, that defendants "do[] not claim that the funds seized . . . are contraband, were forfeited, or [were needed] as evidence[.]" Pl.'s Opp'n at 5. He faults the government for its failure to mention the criminal forfeiture statute in the indictment, *see id.*, for its failure to give adequate notice of its intention to forfeit the property, *see id.*, and for its failure to maintain adequate records regarding the property it seized, *see id.* at 6. He calls on this Court to "determine what in fact[] happen[ed] to the records along with the seized funds," *id.* at 7, and, if appropriate, to return the funds to their "rightful owner," *id.* at 8. This confuses the issue. The propriety of the alleged seizure and forfeiture of currency are not matters within the scope of the FOIA. More importantly, none of plaintiff's submissions addresses, let alone undermines, the DEA's showing that its search for the two lab reports plaintiff originally requested was reasonable. Presented with no arguments to the contrary, the Court therefore concludes that the DEA conducted a reasonable search for the material contained within plaintiff's FOIA request.

## II.   Exemption 7(D)

The Court next turns to the propriety of defendants' decision to withhold documents pursuant to FOIA Exemption 7(D). FOIA Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of [FOIA] Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993); *see Campbell v. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) ("The mere fact that a person or institution provides information to a law enforcement agency does not render that person a 'confidential source' within the meaning of exemption 7(D)."). Rather, "[a] source is [only] confidential within the meaning of [FOIA] [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (quoting *Landano*, 508 U.S. at 170-74). "When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (internal quotation marks and citation omitted). Chief among these factors are "[t]he nature of the crime that was investigated and the source's relation to it." *Landano*, 508 U.S. at 179. If these factors support an inference of

7

confidentiality, then "the Government is entitled to [such] a presumption" for the purpose of Exemption 7(D). *Id.* at 181.

Defendants argues that they are entitled to this inference. As the FBI's declarant explains at length, in the course of a given investigation, certain individuals may be "interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred." Defs.' First Mem., Decl. of David M. Hardy ("First Hardy Decl.") ¶ 58 [Dkt. #26-4]. In such circumstances, these sources provide "detailed information that is singular in nature concerning a specific investigation" that they might not otherwise divulge. *See id.* ¶ 62. Disclosure of their identities "could have disastrous consequences" for these individuals, *id.*, and could, moreover, impair the FBI's ability to obtain the cooperation of sources in future investigations, *id.* ¶ 63.

Confidential informants were vital to the FBI's criminal investigation of plaintiff. As described by the FBI's declarant,

> [Plaintiff] Edgar Mosquera Gamboa along with his associates was the subject of a joint task force law enforcement investigation for criminal activities including money laundering and [a] cocaine . . . trafficking enterprise. Gamboa, the leader of this criminal enterprise[,] participated in criminal activities of a violent nature which spanned across several states i.e., Texas, Missouri, and California as well as across several borders i.e., Col[o]mbia, South America, and the Caribbean. Gamboa was eventually tried, convicted and sentenced to life in prison; he is currently serving his sentence at a United States Prison in Victorville, CA.

Defs.' Second Mem., Second Decl. of David M. Hardy ("Second Hardy Decl.") ¶ 5 [Dkt. #45-2]. The declaration further explains that, "[d]uring the course of [the FBI's investigation of plaintiff's activities, the FBI] solicited and received information from a

8

variety of sources," and "relied heavily on the collected information in the successful prosecution of plaintiff and his associates." *Id.* ¶ 8. Unsurprisingly, some of the information encompassed by plaintiff's FOIA request contains, or references, confidential information that the FBI received during the course of its investigation. To preserve the safety of its informants, the FBI withheld this information under Exemption 7(D). At the Court's urging, defendants provided additional information about the basis for its withholdings, which, for the reasons discussed below, amply supports a finding that Exemption 7(D) applies.

First, the FBI withheld "the identity of a specific business entity/service provider" which, in response to an administrative subpoena, supplied "the FBI specific information pertaining to a business transaction executed by plaintiff." *Id.* ¶ 9. The FBI's declarant states that, "[a]lthough the business transaction in this . . . instance was not illegal, the money used in the transaction was suspected to be the proceeds of an illegal business." *Id.* Not only was "[i]t is highly unlikely that this source would have provided this information to the FBI voluntarily[] without the issuance of the subpoena," *id.*, but it was "reasonable for these sources to fear retaliation from the companies' employees and/or the commercial establishment because [the] investigation involved drug trafficking and other violent criminal behavior of plaintiff and his associates." *Id.* After considering the need for the subpoena and the source's entitlement to compensation for having produced the information, the FBI deemed it "reasonable to infer that these sources provided the information with an expectation of confidentiality." *Id.*

9

Second, the FBI withheld "the names [of], identifying information [about], [and] information provided by third party individuals who were interviewed under circumstances in which an assurance of confidentiality may be inferred." *Id.* ¶ 10. These individuals, the declarant explains, "had direct access to and/or knowledge about plaintiff's and his associates' criminal activities pertaining to drug trafficking and other criminal activity of a violent nature." *Id.* These are sources with whom FBI agents developed relationships and with whom they met "periodically" and "in private locations" "in order to conceal the interaction[s]." *Id.* Information furnished by these sources "includes specific details about drug transactions including time, place, individuals involved and their participation, modus operandi, etc." *Id.* Because only "a very limited group of individuals" could know the information obtained by FBI officials, the release of their identities or the information they provided "would allow plaintiff and other individuals involved[] the opportunity to figure out their true identities." *Id.* In light of their "direct connection to the criminal activities of plaintiff and his associates," exposure of their identities "could place them, as well as their families, in danger should their association and/or cooperation with the FBI and/or other law enforcement agencies be publicly disclosed." *Id.*

Lastly, the FBI withheld "the identity [of] and/or information provided by local law enforcement personnel and/or agency." *Id.* ¶ 11. The FBI's declarant explains that the FBI routinely obtained information from law enforcement investigating drug trafficking in the Houston, Texas area, and from their "own confidential sources, during the course of personal interaction with some member of the organization, while

10

exercising their duties, and/or during the course of undercover operations." *Id.* The FBI's declarant further states that "[t]hese sources were in . . . position[s with] ready access to and/or knowledge about the plaintiff's and his associates' involvement in drug trafficking and/or other violent crimes," and that they routinely "provided information at great risk to their safety and the safety of their families." *Id.* The Court, for the reasons articulated by the FBI's declarant, agrees, and finds that defendants properly asserted FOIA Exemption 7(D) to protect the identities of informants who proffered information under circumstances of implied confidentiality.

## III. Exemption 7(F)[1]

---

[1] The DEA referred a three-page document to the OCDETF, Defs.' First Mem., Decl. of Jill Aronica ("First Aronica Decl.") ¶ 2 [Dkt. #26-7], an entity described as "a multi-agency program in the Department of Justice that provides policy direction and funding to drug enforcement agencies for the investigation and prosecution of high level drug trafficking organizations," *id.* ¶ 8. The document was "an administrative case initiation form that was required for OCDETF designation and funding of an investigation targeting the Plaintiff." *Id.* ¶ 14. Among other information, the form included "data regarding the nature of the targeted organization, the special investigative techniques used or intended to be used to disrupt and dismantle the organization, the goals of the investigation, and the manpower/resource requirements anticipated," *id.* ¶ 8, as well as relevant "names, personal identifying information, [and] agency contacts and phone numbers," *id.* ¶ 12. The OCDETF relied on Exemption 7(F) in conjunction with Exemption 7(C), Defs.' Second Mem., Decl. of Jill Aronica ("Second Aronica Decl.") ¶¶ 2-3 [Dkt. #45-3], to withhold "the names and contact information of Special Agents employed by the Drug Enforcement Administration (DEA) and the Department of Homeland Security (DHS), which are two of OCDETF's component investigative agencies involved on OCDETF task forces," *id.* ¶ 2.

The Court has already found that the OCDETF case initiation form was compiled for law enforcement purposes within the scope of Exemption 7, *Gamboa*, 65 F. Supp. 3d at 169, and that plaintiff conceded the OCDETF's argument with respect to Exemption 7(C), *id.* at 168. Because this information properly is withheld under Exemption 7(C), a discussion of the applicability of Exemption 7(F) is not warranted. *See Roth v. U.S. Dep't of Justice*, 642 F.3d at 1173 (restricting its analysis to the broader of two potentially applicable FOIA Exemptions); *Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994) (declining to address the applicability of FOIA Exemption 7(C) where another FOIA Exemption applied).

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "In reviewing claims under [FOIA] [E]xemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the [ensuing document redactions] were narrowly made to avert the possibility of such harm." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque Publ'g Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)); *see Linn v. Dep't of Justice*, No. 92-1406, 1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995) (noting court's inquiry as to "whether there is some nexus between disclosure and possible harm"). "Within limits, the Court defers to the agency's assessment of danger." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009). The Court here will so defer.

The FBI relies on Exemption 7(F) to withhold from two pages of records "specific dates, time[s], details of drug transactions, such as place, individuals involved, modus operandi, etc.," on the ground that release "would clearly reveal the identit[ies] of the individuals referenced in these records," and in this way "would endanger their [lives] and/or physical safety." Second Hardy Decl. ¶ 14. In support of this position, the FBI's declarant cites plaintiff's status as "the leader of a drug trafficking enterprise which involved money laundering and other criminal activities of a violent nature," and the multi-national breadth of the trafficking enterprise. *Id.* For example, the declarant explains, "there were allegations that the plaintiff had been known to arrange murders to avenge his operation." *Id.* "Given the propensity of violence in the trade of illicit

substances and the conviction of the plaintiff," the FBI asserts that "there is a reasonable expectation that the release of the identifying information of such individuals would pose a danger to their life or physical safety." *Id.*

Plaintiff, for his part, does little to assuage these fears. Rather, as stated previously, plaintiff's opposition focuses on the seizure and forfeiture of currency, *see, e.g.*, Pl.'s Opp'n at 2-3, and on defendants' alleged failure to produce information in support of the claimed forfeiture, *see, e.g., id.* at 5. Aside from his broad, and unsupported, assertions that defendants' FOIA withholdings were inappropriate, *see id.* at 2, plaintiff fails to show that defendants' reliance on Exemption 7(F) is improper. Nor, for that matter, does plaintiff rebut defendants' credible assertions that the release of the requested information could pose a substantial safety risk to the individuals involved. For these reasons, the Court concludes that the FBI adequately justified its decision to withhold information under Exemption 7(F).

## IV. Segregability

The Court turns, then, to the final issue of segregability. If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927

F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Based on all the supporting declarations and Vaughn indices filed in this case, the Court concludes that the agencies adequately specify "which portions of the document[s] are disclosable and which are . . . exempt." *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## CONCLUSION

Accordingly, for the foregoing reasons, the Court concludes that the DEA has shown that its search for records responsive to plaintiff's FOIA request was reasonable, and that the FBI has shown that it properly withheld information under Exemptions 7(D) and 7(F). Defendants' Motion therefore will be GRANTED. In light of this decision, and because no additional matters are outstanding, final judgment will be entered in defendants' favor and this case will be DISMISSED. An Order is issued separately.

*[signature]*
RICHARD J. LEON
United States District Judge